UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| VERSION2 TECHNOLOGY, INC.,<br><br>        Plaintiff,<br><br>    v.<br><br>NEILMED PHARMACEUTICALS, INC.,<br><br>        Defendant. | Case No.  16-cv-04720-LB<br><br>**ORDER ON MOTIONS TO DISMISS AND STRIKE**<br><br>Re: ECF No. 10, 14 |

## INTRODUCTION

This is an antitrust and unfair-competition suit between rival makers of nasal-irrigation products. The plaintiff, Version2 Technology, Inc., claims that the defendant, NeilMed Pharmaceuticals, Inc., engaged in illegally monopolistic behavior and unfair competition when NeilMed sued Version2 in California state court. In that state-court lawsuit, which is still pending, NeilMed (as plaintiff) alleges that Version2 helped a moonlighting NeilMed employee to develop for Version2 a product prototype that rightly belonged to NeilMed. (An arbitrator has already concluded that the employee thereby wrongfully breached duties to NeilMed. And that NeilMed indeed owns the prototype.) According to Version2, NeilMed sued in state court to keep Version2 out of the relevant market. The underlying lawsuit, in other words, *is* the allegedly illegal antitrust behavior and the act of unfair competition. NeilMed now moves to dismiss Version2's complaint — meaning, this federal complaint — under Rule 12(b)(6) and the *Noerr–Pennington* doctrine.

ORDER — No. 16-cv-04720-LB

1  (ECF No. 14.)[1] NeilMed argues that its California lawsuit is protected by the First Amendment so
2  that, under *Noerr–Pennington*, it is immune from this challenge. The court agrees. Because
3  Version2 has not plausibly shown that NeilMed's state-court lawsuit is a "sham" under *Noerr–*
4  *Pennington*, the court grants NeilMed's Rule 12(b)(6) motion and dismisses the present complaint
5  with prejudice.

6  This dismissal has one exception. NeilMed has also moved to strike two of Version2's claims
7  under California Code of Civil Procedure § 425.16, the state's Strategic Lawsuits Against Public
8  Participation ("SLAPP") law. (ECF No. 10.) To the extent that Version2's claims challenge
9  NeilMed's California state lawsuit, the anti-SLAPP statute bars them. Because federal procedure
10 governs this case, however, and permits liberal pleading amendments, the court grants Version2
11 leave to amend its complaint "to clarify" how its second and third claims "implicate" federal
12 patent law, thereby stating a claim that is not directed toward NeilMed's California lawsuit, and
13 consequently is not subject to the anti-SLAPP bar. *See, e.g., See Verizon Del., Inc. v. Covad*
14 *Commc'ns Co.*, 377 F.3d 1081, 1091 (9th Cir. 2004) (indicating that federal procedural law
15 requires granting to leave to amend before striking a claim under anti-SLAPP).[2]

### STATEMENT[3]

**1.  A Moonlighting NeilMed Employee Develops a Product Prototype for Version2**

Both NeilMed and Version2 make and sell nasal-irrigation products. In 2013, Sarveswara Rao
Basa was a NeilMed employee who had been with the company for roughly 12 years.[4] Mr. Basa
was "one of [NeilMed's] most-trusted employees and someone with unfettered access to

---

[1] Record citations refer to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of documents.

[2] Both parties have consented to magistrate jurisdiction. (ECF Nos. 5, 16); *see* 28 U.S.C. § 636(c)(1). The court has determined that this motion can be decided without oral argument. *See* Civil L.R. 7-1(b). The court therefore vacates the hearing that is set for November 17, 2016 but sets a case-management conference for December 1, 2016, at 11:00 a.m. and directs the parties to file a joint case-management statement by November 22, 2016, with their proposed next steps.

[3] This factual statement is drawn from both Version2's complaint and the material that the court has judicially noticed. *See infra*, Analysis, Part 1.

[4] 2nd Am. Compl. – ECF No. 15-4 at 4 (¶¶ 11-12).

United States District Court
Northern District of California

NeilMed's confidential and trade secret information."[5] Whenever NeilMed "developed new products," Mr. Basa "was always kept abreast."[6]

Mr. Basa resigned from NeilMed in 2013.[7] Before resigning, though, Mr. Basa had begun working with Version2 to jointly develop what would become Version2's "ClearNasal" product. In particular, Mr. Basa and Version2 developed a prototype nasal-irrigation device featuring an "angular cap."[8] This product would "compete with NeilMed's" own similar product.[9] After resigning from NeilMed, Mr. Basa worked briefly for Version 2, and later left that job, as well.[10]

**2. The California State Lawsuit & the Arbitration Award**

NeilMed sued Mr. Basa and Version2 in California state court, claiming that, because Mr. Basa had developed the "angular cap prototype" while he was a NeilMed employee, the prototype rightly belonged to NeilMed.[11] NeilMed accused its former employee of breaching his contractual and fiduciary duties to NeilMed, and engaging in unfair competition.[12] NeilMed also alleged that Version2 had wrongfully encouraged and helped Mr. Basa to develop the prototype while he still worked at NeilMed, thus interfering with Mr. Basa's employment contract with NeilMed, aiding and abetting Mr. Basa's misconduct, and unfairly competing with NeilMed.[13] For relief, NeilMed sought damages and an injunction that would require Version2 and Mr. Basa "to refrain from

---

[5] *Id.* at 4 (¶ 12).

[6] *Id.*

[7] *Id.* at 7 (¶ 16).

[8] For the previous two sentences, *see id.* at 7-9, 11-12 (¶¶ 19-20, 29-32).

[9] *Id.* at 8 (¶ 20c).

[10] *See* Compl. – ECF No. 1 at 3 (¶ 15).

[11] *Id.* at 3-4 (¶¶ 15-16); *see, e.g.,* 2nd Am. Compl. – ECF No. 15-4 at 15 (¶ 43) ("[Version 2] is using a product based on a prototype angular cap that belongs to NeilMed, which it unlawfully obtained from Rao Basa"). The current, operative complaint in the California state suit is the Second Amended Complaint, which appears on this court's docket as ECF No. 15-4. The procedural history of the state suit before this complaint is unimportant to this analysis.

[12] *See* Compl. – ECF No. 1 at 3-4 (¶¶ 15-16).

[13] Compl. – ECF No. 1 at 4 (¶ 17); 2nd Am. Compl. – ECF No. 15-4 at 13-18 (¶¶ 36-60).

selling or offering to sell NeilMed's prototype angular cap, or any product derived from that prototype."[14]

NeilMed and Mr. Basa arbitrated their dispute.[15] The arbitrator found that, during his tenure at NeilMed, Mr. Basa had indeed worked with Version2 to develop a nasal-irrigation device. Specifically, the arbitrator found:

> In early 2012, Mr. Basa began working as a consultant for Version2 . . . in addition to his regular employment at NeilMed.
>
> . . . .
>
> The evidence established that at least as early as September 2012, [Version2] was working on a nasal[-]irrigation device. Mr. Basa denies being part of that project but there is documentary evidence to the contrary.
>
> . . . .
>
> [T]he evidence established that Mr. Basa was working on the ClearNasal project for [Version2] before he resigned from NeilMed, and thus he breached his duty of loyalty to NeilMed.[16]

The arbitrator held that Mr. Basa had breached both his fiduciary duty to NeilMed and an intellectual-property agreement that governed his employment.[17] (The arbitrator also held that NeilMed had failed to prove that Mr. Basa had breached his confidentiality agreement or misappropriated trade secrets.[18]) The arbitrator concluded that "the design for the angular cap belongs to NeilMed because Mr. Basa developed that cap while employed at NeilMed."[19] Furthermore, "[t]he arbitrator specifically [found] that Mr. Basa cannot transfer title to [Version2] of that which he does not own. Therefore [Version2] does not now own the 'angular cap prototype' which is the subject of this arbitration. NeilMed owns it."[20]

The award addressed both injunctive and monetary relief. As for the injunction, the arbitrator

---

[14] 2nd Am. Compl. – ECF No. 15-4 at 18-19.

[15] Compl. – ECF No. 1 at 4 (¶ 18); *see generally* Arb. Award – ECF No. 15-2.

[16] ECF No. 15-2 at 9, 36) (record citation omitted).

[17] *Id.* at 42 (¶¶ 1, 3); *see* Compl. – ECF No. 1 at 4 (¶ 19).

[18] ECF No. 15-2 at 42 (¶¶ 2, 4)

[19] *Id.* at 37.

[20] *Id.* at 28.

ORDER — No. 16-cv-04720-LB           4

held: "Mr. Basa is enjoined from acting in violation of NeilMed's rights as owner of the 'angled cap prototype.' He is to return all documentation and prototypes to NeilMed forthwith and is not to transfer anything regarding the 'angled cap prototype' to [Version2] or any other third party."[21]

The arbitrator declined to award damages. Discussing NeilMed's contract claim, in particular, he wrote that "there is monetary damage," and that "there are at least nominal damages for the value of NeilMed's property which [Mr. Basa] took to [Version2]," but that the amount of damage was "uncertain."[22] He similarly refused to award money reflecting a disgorgement of any gain that Mr. Basa may have made from developing the prototype. On this head the arbitrator wrote:

> Mr. Basa testified that he received $10,000 in compensation from [Version2]. NeilMed argues, "That compensation, in whole or at least in large part, was made in return for Mr. Basa's contribution of the prototype cap for the ClearNasal product." That may be true, but the record does not show what portion, if any, was for contribution of the prototype. To award any amount of monetary damages would be speculative. NeilMed's request for monetary damages or disgorgement of profits is therefore denied.

(*Id.*) The California trial court confirmed the arbitration award.[23]

### 3. This Lawsuit

Earlier this year, with the California state lawsuit against it still pending, Version2 filed this federal lawsuit against NeilMed. This suit is — as this court reads the complaint — premised wholly on, directed wholly at, NeilMed's state-court lawsuit. In this suit, Version2 claims that NeilMed's state-court lawsuit is "objectively baseless" and "anticompetitive" — centrally because, according to Version2, that suit seeks a remedy that NeilMed cannot lawfully have, that "would foreclose a substantial amount of competition," and that has already "impaired Version2's ability to enter into the relevant market."[24] Version2 brings three claims. It first claims that NeilMed has unlawfully tried to restrain trade and monopolize the relevant market in violation of the Sherman

---

[21] *Id.* at 42.

[22] *Id.* at 36-37.

[23] ECF No. 15-3.

[24] Compl. – ECF No. 1 at 3 (¶ 14).

ORDER — No. 16-cv-04720-LB            5

1  Act (15 U.S.C. § 2) and the Clayton Act (15 U.S.C. § 4).[25] Next, again pointing to the controversy
2  reflected in NeilMed's "pending state[-]court proceedings," and the injunction that NeilMed seeks
3  there, Version2 requests a declaration "of [the parties'] respective rights and obligations."[26]
4  Finally, Version2 claims that NeilMed's "state[-]court litigation" constitutes "unfair competition"
5  in violation of California's Unfair Competition Law (Cal. Bus. & Profs. Code § 17200).[27] As
6  relief, Version2 seeks (in sum) an injunction, a monetary award (as damages or restitution), and a
7  declaration that NeilMed cannot enjoin Version2 from developing a nasal-irrigation device based
8  on the disputed prototype.[28]

## ANALYSIS

**1. Rule 12(b)(6) & Request for Judicial Notice**

**1.1 Rule 12(b)(6)**

A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of a complaint. *Navarro v. Block,* 250 F.3d 729, 732 (9th Cir. 2001). A claim will normally survive a motion to dismiss if it offers a "short and plain statement . . . showing that the pleader is entitled to relief." *See* Fed. R. Civ. P. 8(a)(2). This statement "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a mere possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556).

When considering a Rule 12(b)(6) motion, the court accepts as true all factual allegations in the complaint and all reasonable inferences that can be drawn from those allegations. *LSO, Ltd. v.*

---

[25] *Id.* at 6-7 (¶¶ 30-37).

[26] *Id.* at 7 (¶¶ 38-43).

[27] *Id.* at 8 (¶¶ 44-49).

[28] *Id.* at 8-9 (prayer clause).

ORDER — No. 16-cv-04720-LB                6

*Stroh,* 205 F.3d 1146, 1150 n. 2 (9th Cir. 2000). Such allegations must be construed in the light most favorable to the nonmoving party. *Shwarz v. United States,* 234 F.3d 428, 435 (9th Cir. 2000). Nevertheless — and in a facet of the rule that is salient here — the court "is not required to accept legal conclusions cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged." *Clegg v. Cult Awareness Network,* 18 F.3d 752, 754–55 (9th Cir. 1994) (quoted in *Rucker v. Trent*, 2012 WL 4677741, *2 (N.D. Cal. Sept. 30, 2012)); *accord, e.g., Speck v. Shasta County Sheriff's Dept.*, 2014 WL 576202, *2 (E.D. Cal. Feb. 11, 2014). Furthermore, "when 'a plaintiff seeks damages . . . for conduct which is prima facie protected by the First Amendment, the danger that the mere pendency of the action will chill the exercise of First Amendment rights requires more specific allegations than would otherwise be required.'" *Kottle v. Nw. Kidney Ctrs*., 146 F.3d 1056, 1063 (9th Cir. 1998) (quoting *Franchise Realty Interstate Corp. v. San Francisco Local Joint Executive Bd. of Culinary Workers*, 542 F.2d 1076, 1083 (9th Cir. 1976)); *accord, e.g., McMillin v. Foster City*, 2012 WL 2568207, *9 (N.D. Cal. July 2, 2012).

### 1.2  Request for Judicial Notice

NeilMed asks the court to judicially notice five documents: the initial and two amended complaints in the state-court suit; the arbitration award; and the state-court order confirming that award. (ECF Nos. 13, 15.) Judicially noticed material may be considered in deciding a Rule 12(b)(6) motion without converting that motion into one for summary judgment. *E.g., Lee v. City of Los Angeles*, 250 F.3d 668, 688-89 (9th Cir. 2001). The documents here are "matters of public record" — they are mostly elements of the state-court file — and so are proper objects of judicial notice. *E.g., id.* at 689-90; *Bonnel v. Best Buy Stores, L.P.*, 881 F. Supp. 2d 1164, 1168-69 (N.D. Cal. 2012). (The arbitration award itself is perhaps less surely subject to judicial notice; but, here, that award was attached to the state court's confirmation order (*see* ECF No. 15-2 at 6-49), and so is embodied in a document that can be noticed.) Furthermore, the state-court suit, the initial state-court complaint, the arbitration, and the arbitration award are all referenced in, and integral to, the present complaint. *See* (Compl. – ECF No. 1 at 3-5 [¶¶ 14-23]); *Knievel v. ESPN*, 393 F.3d 1068,

ORDER — No. 16-cv-04720-LB                 7

1  1076 (9th Cir. 2005) (explaining that such material may be considered on Rule 12(b)(6) motion).
2  Version2 has not opposed the request for judicial notice or questioned the authenticity of the
3  evidentiary material that NeilMed has filed. The court therefore takes judicial notice of all the
4  material contained in (ECF Nos. 13, 15).

## 2. The *Noerr–Pennington* Doctrine

### 2.1  The Doctrine & Basic Test

"The *Noerr–Pennington* doctrine derives from the First Amendment's guarantee of 'the right of the people . . . to petition the Government for a redress of grievances.'" *Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 929 (9th Cir. 2006) (quoting U.S. Const. amend. I).[29] "Under the *Noerr–Pennington* doctrine, those who petition any department of the government for redress are generally immune from statutory liability for their petitioning conduct." *Sosa*, 437 F.3d at 929. Though it originally "arose in the antitrust context," the *Noerr–Pennington* rule has been "extended" to cover matters "outside the antitrust field." *Id.* at 929-31 (discussing cases). Indeed, "the *Noerr–Pennington* doctrine stands for a generic rule . . . applicable to any statutory interpretation that could implicate the rights protected by the Petition Clause." *Id.* at 931. And, as the Ninth Circuit has further explained: "[R]ecognizing that 'the right to petition extends to all departments of the government' and that '[t]he right of access to the courts is . . . but one aspect of the right of petition,'" the Supreme Court has "extended *Noerr–Pennington* immunity to the use of 'the channels and procedures of state and federal . . . courts . . . .'" *Id.* at 929-30 (quoting *Cal. Motor Transp. Co. v. Tracking Unlimited*, 404 U.S. 508, 510-11 (1972)) (emphasis removed). State-court litigation is thus a mode of petitioning that *Noerr–Pennington* protects. *See id.*

How, then, is *Noerr–Pennington* applied? "Under the *Noerr–Pennington* doctrine, the filing of a lawsuit is immune from the antitrust laws unless the suit is a 'sham.'" *Columbia Pictures Indus., Inc. v. Prof'l Real Estate Inv'rs, Inc.*, 944 F.2d 1525, 1529 (9th Cir. 1991), *aff'd*, 508 U.S. 49

---

[29] The doctrine's eponymous source cases are *E. R.R. Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127 (1961) and *United Mine Workers v. Pennington*, 381 U.S. 657 (1965).

ORDER — No. 16-cv-04720-LB              8

(1993) (quoting *California Motor Transport*, 404 U.S. at 510). "[A]n antitrust plaintiff must make a two-part showing to support a finding of sham: (1) that the suit is *baseless* — a legal question; and (2) that the suit was brought as part of an anticompetitive plan external to the underlying litigation — a question of fact." *Columbia Pictures*, 944 F.2d at 1532 (citation omitted) (emphasis added). Furthermore:

> When the antitrust plaintiff challenges one suit [as Version2 does here] and not a pattern, ***a finding of sham requires not only that the suit is baseless***, but also that it has ***other characteristics of grave abuse***, such as being coupled with actions or effects external to the suit that are themselves anti-competitive.

*Id. at* 1530 (second emphasis added) (citing *Rickards v. Canine Eye Registration Found., Inc.*, 783 F.2d 1329, 1334 (9th Cir. 1986) (quoting in turn *Omni Resource Dev. Corp. v. Conoco, Inc.,* 739 F.2d 1412, 1414 (9th Cir. 1984)).

Version2 argues that whether something is a "sham" for *Noerr–Pennington* purposes is a "question of fact" that "rarely" admits of Rule 12(b)(6) dismissal. (ECF No. 22 at 6 (citing *Clipper Exxpress v. Rocky Mountain Motor Tariff Bureau, Inc.*, 690 F.2d 1240, 1253 (9th Cir. 1982) ("fact") and *Sonus Networks, Inc. v. Inventergy, Inc.*, 2015 WL 4539814, *2 (N.D. Cal. July 27, 2015) ("rarely")). That may be. And Version2's cites to *Clipper Exxpress* and *Sonus Networks* on this point are accurate. Given the Ninth Circuit's later statement in *Columbia Pictures*, however, the better view would seem to be that only the second, "anticompetitive plan" part of *Noerr–Pennington's* "sham" inquiry presents "a question of fact," while the first criterion, "baseless[ness]," raises "a legal question." *See Columbia Pictures*, 944 F.2d at 1532. The court need not resolve the point. It is clear in any case that, when the law and facts compel one conclusion as a matter of law, as they do here, a case can be dismissed under Rule 12(b)(6) on *Noerr–Pennington* grounds. *See, e.g., Sosa*, 437 F.3d at 927, 929-41 (affirming Rule 12(b)(6) dismissal).

**2.2 Version2 Has Not Shown That NeilMed's California State Lawsuit Is Baseless — Applying *Noerr–Pennington***

There can be no dispute that NeilMed's California lawsuit is a petition within the compass of *Noerr–Pennington* protection. *See Sosa*, 437 F.3d at 929-30 (quoting *California Motor Transport*,

1   404 U.S. at 510-11) (state-court litigation is a mode of petitioning within *Noerr–Pennington*). The

2   decisive issue is thus whether, as Version2 alleges, that lawsuit is a "sham." The court concludes

3   that it is not. More exactly, the court holds that Version2 has not plausibly shown that NeilMed's

4   California suit is "objectively baseless." That lawsuit is consequently immune under *Noerr–*

5   *Pennington* from Version2's instant federal complaint. Or, more correctly, NeilMed is immune

6   from liability premised on its California suit.

To be a "sham" that is unprotected by *Noerr–Pennington*, a lawsuit

> must be objectively baseless in the sense that no reasonable litigant could
> realistically expect success on the merits. If an objective litigant could conclude
> that the suit is reasonably calculated to elicit a favorable outcome, the suit is
> immunized under *Noerr[–Pennington]*, and an antitrust claim premised on the
> sham exception must fail. Only if challenged litigation is objectively meritless may
> a court examine the litigant's subjective motivation.

*Prof'l Real Estate Inv'rs, Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 60 (1993) (footnote omitted).

Version2's allegations and arguments do not meet this test. They do not show (read: plausibly allege) that NeilMed's California state suit is "objectively baseless." Version2's entire "sham" argument is directed toward the relief that NeilMed seeks in its California suit. In sum, Version2 argues that NeilMed could not have "realistically expect[ed]" to prevail on its prayer for either damages or an injunction. *See* (ECF No. 22 at 3, 6-7.)

But Version2 is wrong on both heads. Given the express conclusions of the judicially confirmed arbitration award, in fact, Version2 is incorrect as a matter of law. That award alone gave NeilMed "reasonable" and "realistic" grounds to sue and to expect that it might succeed. Conversely stated, the arbitration award's express terms make it impossible to hold that NeilMed's California suit is "objectively meritless."

Version2 first argues that NeilMed cannot prove that it incurred damages as a result of the lost prototype. (ECF No. 22 at 3, 6-7.) This is incorrect. The lost prototype is itself injury sufficient to ground a "realistic" claim. The arbitration award expressly found that NeilMed owned — which is to say, had property rights in — the prototype. That award states: "The arbitrator specifically finds that Mr. Basa cannot transfer title to [Version2] of that which he does not own. Therefore

ORDER — No. 16-cv-04720-LB                 10

[Version2] does not now own the 'angular cap prototype' which is the subject of this arbitration. *NeilMed owns it.*" (ECF No. 15-2 at 28) (emphasis added). Elsewhere the award similarly states: "Mr. Basa is enjoined from acting in violation of *NeilMed's rights as owner* of the 'angled cap prototype'." (*Id.* at 43) (emphasis added). With respect to the contract aspect of NeilMed's lawsuit, in particular, the arbitrator found that, "there is monetary damage," and "there are at least nominal damages for the value of NeilMed's property which he took to [Version2]." (*Id.* at 42.)

Furthermore, as NeilMed points out in its separate motion to strike (ECF No. 23 at 4), Mr. Basa claimed that the prototype cost him $1500 to build. *See* (ECF No. 9-14 at 2-3 [email; sealed exhibit].) This suggests that, if nothing else, the prototype had at least that material value.

Finally on this point, Version2 points out that the arbitrator "declined to award any monetary damages to NeilMed." (ECF No. 22 at 4; *see* ECF No. 15-2 at 43 [award].) That is true. But that was because, again, the arbitrator found the damages "uncertain," and moreover could not determine what part of Mr. Basa's compensation from Version2 could be attributed to his work on the prototype. (ECF No. 15-2 at 36-37, 43.) The arbitrator thus could not find a non-"speculative" measure by which to order Mr. Basa to "disgorge[]" what he had gained from developing the prototype. (*See id.*) Even if we transpose this point to the lost profits that NeilMed might have suffered from *Version2's* conduct involving the prototype, and hypothesize that there, too, it would be difficult for NeilMed to establish lost profits, this still does not mean that NeilMed's suit is "objectively baseless." That NeilMed might struggle to prove one form of damage (lost profits) does not mean that "no reasonable litigant" could have expected to successfully show *some* damage. It does not show that NeilMed's claims are "objectively meritless." In broadest stroke, the court agrees with NeilMed that it is reasonable and realistic, *see Professional Real Estate Investors*, 508 U.S. at 60, to contend that the loss of a pharmaceutical-product prototype entails some compensable harm.

The injunction that NeilMed seeks in California state court likewise does not render the state lawsuit "objectively meritless." A reasonable litigant could realistically expect to secure the requested injunction — or one very much like it. In the underlying California suit, again, NeilMed asks the state court to enjoin Version2 "from selling or offering to sell NeilMed's prototype

angular cap, or any product derived from that prototype." (ECF No. 15-4 at 18-19.) This is consistent with the injunction that the arbitrator has already placed on Mr. Basa. In this respect, the arbitration award provides:

> Mr. Basa is enjoined from acting in violation of NeilMed's rights as owner of the "angled cap prototype." He is to return all documentation and prototypes to Neil Med forthwith and is not to transfer ***anything regarding the "angled cap prototype"*** to [Version2] or any other third party.

(ECF No. 15-2 at 43) (emphasis added). Contrary to Version2's more sweeping characterization, NeilMed's request for an injunction does not "assert the right to stop development of a competing product." *See* (ECF No. 22 at 7.)

It is impossible to conclude on these facts that Version2 has plausibly alleged the "objectively meritless" character of NeilMed's state-court lawsuit.

### 2.3 Version2 Has Not Alleged or Shown "Other Characteristics of Grave Abuse"

Version2's complaint in this court is based entirely on NeilMed's single California state-court lawsuit. *See generally* (ECF No. 1.) Because Version2's complaint is based on "one suit," rather than a "pattern" of allegedly wrongful conduct, it cannot avoid *Noerr–Pennington* immunity unless it shows that NeilMed's conduct displays some "other characteristics of grave abuse, such as . . . actions or effects external to the [underlying] suit that are themselves anti-competitive." *See Columbia Pictures*, 944 F.2d at 1532. Version2 has not made this showing. It has not alleged any such "abuse" outside the California suit. *See* (ECF No. 1), *passim.* Nothing that the court has seen in the relevant material suggests any "abuse . . . external to" the state-court suit. For this reason, too, as a matter of law, Version2 has not plausibly alleged that the state-court lawsuit is a sham. *See Columbia Pictures*, 944 F.2d at 1532.

\*   \*   \*

Because the court has resolved this motion on the "baselessness" and "other grave abuse" heads of the *Noerr–Pennington* inquiry, it does not reach the "anticompetitive plan" issue. *See Professional Real Estate Investors,* 508 U.S. at 60 ("Only if challenged litigation is objectively meritless may a court examine the litigant's subjective motivation."). This decision expresses no

1    opinion on the ultimate merits of NeilMed's state-court claims. The conclusion here is only that,

2    under Rule 12(b)(6), Version2 has not plausibly alleged that NeilMed's state-court suit is a "sham"

3    that falls outside *Noerr–Pennington* immunity.

### 3. Anti-SLAPP — Leave to Amend

The court has thoroughly reviewed the parties' anti-SLAPP arguments. Given the posture of this case, though, the court's treatment of this matter will be brief. The court has difficulty seeing how the present Claims II and III contain a patent claim, or otherwise "implicate" patent law, so as to elude California's anti-SLAPP statute. Especially where Version2 itself — outside its anti-SLAPP defense — insists that the prototype in question carries no patent. *See* (ECF No. 1 at 5-6 [¶¶ 23, 27]; ECF No. 22 at 4, 7.)[30] The underlying California state suit (which Version2's federal claims do target) makes no patent claim, depends in no way on a patent. *See* (ECF No. 13-1, *passim*.)[31]

Were the pleadings to remain in their present form, the court therefore would likely grant NeilMed's anti-SLAPP motion. But federal amendment rules are liberal. *See* Fed. R. Civ. P. 15(a). The court cannot say that Version2's claims "could not possibly be cured by the allegation of other facts." *E.g., Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001). The court thus grants Version2 leave to amend its complaint "to clarify" (ECF No. 21 at 17) how its declaratory-relief

---

[30] Version2's opposition to the Rule 12(b)(6) motion argues that, after the arbitrator's decision, "[NeilMed] could no longer claim any rights arising under state trade[-]secret law and could point to *no applicable patent right* . . . ." (ECF No. 22 at 4) (emphasis added). And that, "in the absence of a patent, violation of a trade[-]secret law or breach of a duty of confidence – *none of which claims are asserted in the underlying state[-]court action* – NeilMed . . . cannot . . . stop development of a competing product, especially where . . . the specifications for . . . the product components are . . . available on the worldwide web." (ECF No. 22 at 4, 7) (emphasis added). The instant complaint makes similar "no patent" statements. (ECF No. 1 at 5, 6 [¶¶ 23, 27] ["[O]wnership of the angled cap prototype, *without trade[-]secret or patent protection*, . . . provides no rights over any allegedly derivative product . . . ."] [emphasis added].)

[31] The California complaint mentions "patent" twice. First, in alleging that a Version2 webpage touts its product thus: "ClearNasal™ Custom CAP (Patent Pending) combines the advantage of traditional netipot and squeeze bottle's positive pressure." (ECF No. 13-1 at 14 [¶ 35].) Second, in alleging that Mr. Basa "purported to assign his patent application for the design of the ClearNasal product" to the consultancy that he owns. (ECF No. 13-1 at 10-11 [¶ 21]; *see id.* at 4 [¶ 6].) It is unclear how either of these items, by being somehow "implicated" in Version2's federal claims, brings the latter within the exclusive patent jurisdiction of the federal courts.

ORDER — No. 16-cv-04720-LB                    13

1   and California UCL claims involve federal patent law and, to that extent, fall outside California's

2   anti-SLAPP statute. *See Verizon Del., Inc. v. Covad Commc'ns Co.*, 377 F.3d 1081, 1091 (9th Cir.

3   2004) ("[G]ranting a defendant's anti-SLAPP motion . . . without granting the plaintiff leave to

4   amend would directly collide with Fed. R. Civ. P. 15(a)'s policy favoring liberal amendment.");

5   *Rogers v. Home Shopping Network, Inc.*, 57 F. Supp. 2d 973, 980-84 (C.D. Cal. 1999). The court

6   consequently denies NeilMed's anti-SLAPP motion. This denial does not prejudice NeilMed's

7   right to renew its anti-SLAPP motion, or to raise a new one, depending on the content of

8   Version2's amended complaint. *See, e.g., Art of Living Found. v. Does 1-10*, 2012 WL 1565281,

9   *14-26 (N.D. Cal. May 1, 2012) (analyzing second anti-SLAPP motion in context of amended

10  claims).

11   Before setting a deadline for Version2's amended complaint, the court will hold a case-

12  management conference, and now sets that conference for December 1, 2016 at 11:00 a.m. The

13  parties must file a joint case-management statement by November 22, 2016, that addresses the

14  parties' proposed next steps.

## CONCLUSION

17   NeilMed's state-court lawsuit constitutes First Amendment petitioning that falls within the

18  compass of *Noerr–Pennington* immunity. Version2 has not plausibly alleged that the state-court

19  suit is a "sham" within the meaning of the *Noerr–Pennington* doctrine. The court thus dismisses

20  the present complaint with prejudice. The anti-SLAPP issue complicates matters. The court grants

21  Version2 leave to amend its complaint for the sole purpose of clarifying how Claims II and III

22  "implicate" federal patent law in a way that allows them to avoid the California anti-SLAPP

23  statute. The court thus denies without prejudice NeilMed's present anti-SLAPP motion.[32]

---

[32] A final word. The court does not see why the parties cannot resolve their substantive differences entirely inside the California state lawsuit. The parties are there before the excellent and respected Judge Haakenson. This court is always ready to help the parties work through their disagreement. Barring some true patent claim that attracts exclusive federal jurisdiction, though, it is hard to see what benefit lies in proliferating the parties' dispute into this forum.

United States District Court
Northern District of California

This disposes of ECF Nos. 10 and 14.

**IT IS SO ORDERED.**

Dated: November 9, 2016



_____
LAUREL BEELER
United States Magistrate Judge